COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NOS. 2-03-189-CR
                
                       
   
                             2-03-190-CR
                                   
      
                              2-03-191-CR
   
   
MARIO 
ALBERTO TAMEZ                                                       APPELLANT
   
V.
   
THE 
STATE OF TEXAS                                                                  STATE
   
------------
 
FROM 
THE 297TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
 
I. 
Introduction
 
        Appellant 
Mario Alberto Tamez appeals his conviction for aggravated assault with a deadly 
weapon. A jury found Tamez guilty and assessed his punishment at two years’ 
confinement. In a single point, Tamez challenges the factual sufficiency of the 
evidence to support his conviction.
II. 
Background Facts
        On 
the night of January 5, 2002, Tamez, his sister, and some friends went to a pool 
hall called Mi Tierra in Arlington. The owner of the pool hall, Esther Gaona, 
knew Tamez by his nickname “Green Eyes.” During the evening, a fight 
started, and Gaona saw Tamez running with a pool ball in his hands. She thought 
he was going to throw it at the back of a customer’s head, so she screamed in 
Spanish, “Ojos Verdes, no.” Tamez heard the scream, turned around, met 
Gaona’s eyes, and threw the pool ball at her. Gaona thought the ball was 
coming towards her face and tried to catch it in her hand, but it slipped 
through her fingers and hit her in the chin, cutting her and requiring five or 
six stitches. While Gaona was grabbing her face, Tamez threw a second ball, 
hitting Gaona in the shoulder.
        A 
few days later, Gaona met with a detective and identified Tamez in a photo 
spread as the man who threw the pool ball at her. When Gaona recognized Tamez in 
the photograph, she became scared, very nervous, and started to shake. The 
detective exhibiting the photo spread to Gaona confirmed that Gaona was calm 
until she was shown the pictures. Although the pool hall was crowded on the 
evening of the offense, the detective testified that no one has ever come 
forward to indicate that someone other than Tamez was the person who hurled the 
pool ball at Gaona’s head.
        The 
defense contradicted the above evidence. Tamez walked in front of the jury to 
show them that his eyes are not green. Several witnesses testified that Tamez 
did not throw the pool ball. Manual Mendoza, Tamez’s friend, testified that a 
fight broke out; Tamez was struck with a pool ball and ran outside; he then saw 
German Carreon[2] throw a pool ball at Gaona. Mendoza 
further testified that Tamez did not throw any pool balls and that he went to 
the hospital with Tamez, who received stitches. Matilda Gaddy, assistant 
director of medical records for Medical Center of Arlington, delivered medical 
records, which were introduced into evidence, showing Tamez was admitted shortly 
after midnight on January 6, 2002, for a laceration to his right eyebrow caused 
by a “pool ball (thrown).”
        Eric 
Torez (a/k/a Pedro Pineda), another friend of Tamez’s, testified that he did 
not see Tamez get hit by the ball, but he saw Tamez leave the bar. He further 
testified that he did not see Tamez throw any pool balls.
        Paula 
Tamez, Tamez’s sister, testified that when the fight broke out at the pool 
hall, she saw her brother get hit in the eye with a pool ball. She said he took 
off his shirt to cover his eye and then started walking outside. Next, she saw a 
beer bottle fly by German’s head, and then German threw a pool ball that hit 
Gaona. She said that her brother did not take any pool balls with him outside 
the building and that he dropped her off at home before he went to the hospital. 
She agreed that her brother is nowhere near the same size and shape as German[3] and that it would be pretty hard to mistake her brother 
for German. Additionally, she admitted that she has bad vision and that she 
never went to the police with her brother’s innocence.
        Michael 
Garcia, another friend of Tamez, testified that the only two things he remembers 
from the night in question are (1) Tamez getting hit and (2) running outside 
because there was too much going on in the pool hall. However, prior to that 
statement he testified that Tamez did not ever throw a pool ball. He further 
admitted that he never called the police or the District Attorney to tell them 
what he knew.
        JoAnn 
Rebolloso, who worked at the pool hall and whose sister has had children with 
Tamez, testified that she was not at the pool hall on the night in question. She 
saw Tamez after his eyebrow had been cut because he came to her house to get his 
insurance card before he went to the hospital. She testified that she went to 
the pool hall on Sunday and Monday after the incident happened on Saturday night 
and that Gaona described her attacker as chunky, light-skinned, and bald. She 
further testified that when she showed Gaona a picture of Tamez, Gaona told her 
that she did not get a good look at her attacker and that she just heard 
somebody say “no, Green Eyes.” Gaona testified that she did not speak to 
Rebolloso about the attack because she did not want to ruin their friendship.
III. 
Standard of Review
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party. Johnson 
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 
S.W.2d 126, 129, 134 (Tex. Crim. App. 1996). Evidence is factually insufficient 
if it is so weak as to be clearly wrong and manifestly unjust or the adverse 
finding is against the great weight and preponderance of the available evidence. 
Johnson, 23 S.W.3d at 11. Therefore, we must determine whether a neutral 
review of all the evidence, both for and against the finding, demonstrates that 
the proof of guilt is so obviously weak as to undermine confidence in the 
verdict, or the proof of guilt, although adequate if taken alone, is greatly 
outweighed by contrary proof. Id. In performing this review, we are to 
give due deference to the fact finder’s determinations. Id. at 8-9; Clewis, 
922 S.W.2d at 136. We may not substitute our judgment for that of the fact 
finder’s. Johnson, 23 S.W.3d at 12. Consequently, we may find the 
evidence factually insufficient only where necessary to prevent manifest 
injustice. Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 
404, 407 (Tex. Crim. App. 1997).
IV. 
Factually Sufficient Evidence of Identity
        In 
his sole point of error, Tamez challenges the factual sufficiency of the 
evidence supporting his conviction for aggravated assault with a deadly weapon. 
Specifically, Tamez argues that the evidence is factually insufficient to prove 
that he is the person who threw the pool ball at Gaona. Tamez emphasizes the 
conflicts in the record, including Gaona’s testimony that is “totally at 
odds with the testimony of JoAnn Reboslloso [sic].”
        Evidence 
that supports Tamez’s assertion that the evidence is factually insufficient 
includes: Manual Mendoza and Paula Tamez identified German as Gaona’s 
attacker; Mendoza, Torez, and Garcia testified that Tamez did not throw any pool 
balls; and Rebolloso conflicted Gaona’s testimony of Tamez’s identity.
        Having 
examined the evidence in a neutral light, including the evidence relevant and 
supportive of Tamez’s argument on appeal, we conclude that the proof of 
Tamez’s guilt is not so weak as to undermine confidence in the jury’s 
verdict. Nor is the evidence of Tamez’s guilt outweighed by contrary proof. 
Although Tamez called five witnesses to testify and all testified of his 
innocence, each of the witnesses was either a friend or a relative. 
Consequently, the jury may have viewed the witnesses as biased. Additionally, 
none of these witnesses relayed their claims regarding Tamez’s innocence to 
authorities prior to trial. The jury also had the opportunity to view Tamez’s 
eyes and still believed that he was Gaona’s attacker in this case based on 
Gaona’s testimony. The jury’s response to this evidence is proper under Goodman 
v. State:
   
For 
example, suppose a modern-day Cretan Liar testifies: “I saw the defendant put 
the baggie of cocaine down on the sidewalk.” Although the Cretan Liar has five 
prior perjury convictions, his testimony . . . standing alone, is also factually 
sufficient to support the element of possession. If the jury believes him (and 
it is entitled to do so under either a legal or factual sufficiency review), 
then the Cretan Liar’s testimony conclusively proves the point.

66 
S.W.3d 283, 285-86 (Tex. Crim. App. 2001). Thus, the jury was entitled to 
believe Gaona’s testimony regarding the identification of her attacker. We 
hold that Tamez’s conviction for aggravated assault with a deadly weapon is 
supported by factually sufficient evidence.[4]  
We overrule Tamez’s sole point of error.
V. 
Conclusion
        Having 
overruled Tamez’s sole point of error regarding only his conviction for 
aggravated assault with a deadly weapon, we affirm the trial court’s judgments 
as to all three cases.
 
  
                                                          SUE 
WALKER
                                                          JUSTICE

  
PANEL 
A:   CAYCE, C.J.; LIVINGSTON and WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
January 29, 2004

 
NOTES
1. 
See Tex. R. 
App. P. 47.4.
2. 
The defense attempted to call German Carreon as a witness, but he invoked his 
Fifth Amendment right while on the stand.
3. 
Paula described German as fat, bald, dark, and weighing 200-230 pounds.
4. 
This holding is not contradictory to our holding in Logan v. State, which 
Tamez requests that we rely upon. Nos. 2-02-191-CR, 2-02-192-CR, 2-02-193-CR, 
2-02-194-CR, 2003 WL 22253894 (Tex. App.—Fort Worth Oct. 2, 2003, no pet.) 
(memorandum opinion, not designated for publication). In Logan, we stated 
that the
shaky 
identification of Appellant as the boat operator after seeing a mostly obscured 
face from fifty to sixty feet away for an instant in bright sunlight does not 
mesh with his inability to determine whether a helmeted individual in a picture 
in his hand, viewed at his leisure in court, was also Appellant. The State’s 
weak evidence, coupled with the defense witnesses’ contradictory testimony, 
undermines confidence in the verdict.
Nos. 
2-02-191-CR, 2-02-192-CR, 2-02-193-CR, 2-02-194-CR, 2003 WL 22253894, at *3. 
Here, Gaona had no trouble identifying Tamez in the photo spread. Therefore, her 
testimony alone sufficiently proves the identity of her attacker as Tamez.